

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00058-CV

_____

SUE KILLGORE MOBLEY, Appellant

V.

JAMES A. MOBLEY, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 2011-1426-B

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

## O P I N I O N

This appeal involves two inextricably related lawsuits, the origins of which began in April 2009 when James A. Mobley filed for divorce from Sue Killgore Mobley. Within a year of James having filed for divorce, the parties negotiated and entered into a mediated settlement agreement dated June 7, 2010. Five days later, the trial court entered a final decree of divorce that incorporated the settlement agreement. Pursuant to the settlement agreement, the parties arranged to divide their personal property, multiple residences, and several vehicles, all of which were considered community property. The decree of divorce also fully described the separate property of both James and Sue.

About two years after the divorce proceedings concluded, Sue filed a lawsuit (the Reed Suit) against Perry D. Reed and Perry D. Reed & Co. (the Reed Defendants)[1] alleging that they breached their fiduciary duty to her by betraying "the special relationship that existed between the parties." Specifically, Sue claimed, among other things, that the Reed Defendants obtained her wage and income information from the Internal Revenue Service (IRS) without her consent. Not long afterward, Sue filed her first amended petition, adding James as a defendant and claiming that she believed him to have been a principal actor in obtaining her confidential wage and income information. She also maintained that his participation might be necessary to aid with the waiver of any accountant-client privilege in the suit.[2]

---

[1]The Reed Defendants had been the couple's accountants prior to their divorce proceedings and continued to serve as James' accountants during and after the proceedings.

[2]Sue claimed to have learned through discovery in the Reed Suit that James had fraudulently concealed material information during their earlier divorce proceedings. As a result, she filed a bill of review in the 307th Judicial District Court of Gregg County (the Bill of Review Suit) asking that court to set aside its final decree of divorce and re-divide

In response to Sue's first amended petition, James filed a motion for partial summary judgment and also requested an award of attorney fees as sanctions. The trial court granted James' motion and awarded attorney fees in his favor. Sue timely filed this appeal. For the reasons below, we reverse the trial court's award of attorney fees as sanctions and affirm the trial court's partial summary judgment in favor of James.[3]

## I.     Sue's Voluntary Nonsuit Entered After the Trial Court Granted James' Partial Summary Judgment Mooted Any Appeal of the Merits of that Judgment

Sue voluntarily nonsuited all of her claims against James after the trial court granted the partial summary judgment. When she did, she rendered any appeal of the partial summary judgment moot.

The trial court entered its Order Granting Partial Summary Judgment to James on Sue's claims on March 7, 2012. Two days later, on March 9, 2012, Sue filed a notice of nonsuit of her claims against James, asserting, "Plaintiff no longer desires to prosecute her claims asserted in this lawsuit." The trial court entered its Order Granting Nonsuit Against Defendant James A. Mobley on March 9, 2012, ordering that "the portion of the case involving Defendant, James A. Mobley [be] dismissed without prejudice to SUE KILLGORE MOBLEY'S right to refile it." The trial

the parties' community property after considering the information allegedly concealed by James during the original divorce proceeding. The 307th District Court granted summary judgment in James' favor in the Bill of Review Suit and also awarded James his attorney fees. Sue has appealed from that summary judgment under our cause number 06-15-00058-CV. We include in this opinion facts that are applicable to both this appeal and the Bill of Review Suit appeal; however, the substance of this opinion is limited to the issues raised by Sue in the Reed Suit. By opinion of even date herewith, we address the issues raised by Sue in the Bill of Review Suit under cause number 06-15-00058-CV.

[3]On November 25, 2013, the trial court consolidated the Reed Suit and the Bill of Review Suit for purposes of the hearing on the attorney fees issue. The trial court took the matter under advisement and, on June 3, 2015, it issued a letter ruling granting James' requests for attorney fees in both cases.

court entered a subsequent Amended Order Granting Nonsuit Against Defendant, James A. Mobley, on March 14, 2012, clarifying that the dismissal was "subject to JAMES A. MOBLEY'S right to pursue his claim as set out in his Original Answer on file herein."[4]

Accordingly, we are presented with the unique question of whether a plaintiff, who voluntarily nonsuited all of her claims against the defendant after the trial court granted the defendant's summary judgment, may seek appellate review of the merits of the trial court's summary judgment. Not surprisingly, there is very little caselaw addressing this question. Yet, the cases which do address appeals after voluntary nonsuits in other contexts persuade us that, by voluntarily nonsuiting her case against James after the trial court granted James' motion for partial summary judgment, Sue has rendered moot her appeal of the merits of that summary judgment.

To begin with, the Supreme Court has held that, even though a plaintiff's voluntary nonsuit cannot negate a defendant's counter-claim for "costs, attorney's fees and sanctions . . . , it does not forestall the nonsuit's effect of rendering the merits of the case moot." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 101 (Tex. 2006) (per curiam). In *Blackmon*, Shultz sued UTMB for wrongful death and survival under the Texas Tort Claims Act. *Id.* at 99. "UTMB filed a plea to the jurisdiction, which the trial court denied, and then brought an interlocutory appeal." *Id.* The court of appeals reversed the trial court's order and rendered

---

[4]Although the dismissal orders and partial summary judgment did not affect Sue's claims against the Reed Defendants, Sue subsequently nonsuited her claims against the Reed Defendants on October 17, 2012. Therefore, when the trial court made its ruling on James' pending claim for attorney's fees, no unresolved claims remained between the parties. Accordingly, even though the dismissal orders and partial summary judgment were not final at the time they were entered because other claims were pending against other parties, those other claims were eventually resolved. To simplify matters, we will discuss the dismissal orders and partial summary judgment as if James and Sue were the only parties before the trial court at the time they were entered.

4

judgment for UTMB. *Id*. The court of appeals then granted Schultz's motion for rehearing and withdrew its original opinion. *Id*. After the original opinion was withdrawn, but before rehearing, Schultz voluntarily nonsuited her case in the trial court and moved to dismiss the appeal. *Id*. The court of appeals denied the motion to dismiss and rendered an opinion on rehearing affirming the trial court's original order denying UTMB's plea to the jurisdiction. *Id*. The Supreme Court held that the court of appeals lacked jurisdiction to rule on the motion for rehearing due to Schultz's voluntary nonsuit. *Id*.

Additionally, the Supreme Court has held that, if a plaintiff nonsuits his claims after the trial court enters a summary judgment that is unfavorable to the plaintiff, the nonsuit "results in a dismissal with prejudice as to the issues pronounced in favor of the defendant." *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam). In *Hyundai*, the Alvarados sued Hyundai and others for personal injuries. *Id*. at 854. Hyundai moved for partial summary judgment, which the trial court granted. *Id*. The Alvarados then nonsuited their claims against Hyundai without prejudice and refiled the same claims in a different county. *Id*. The second trial court granted Hyundai's motion for summary judgment, holding that the dismissal of the original lawsuit should have been with prejudice. *Id*. The court of appeals reversed and held that a plaintiff had an absolute right to nonsuit his claim before the submission of evidence was completed and that summary judgment could not prevail over that right. *Id*. The Supreme Court reversed the court of appeals and held that the nonsuit should have been dismissed with prejudice. *Id*.

Although neither *Blackmon* nor *Hyundai* involved an attempt to appeal the merits of an adverse summary judgment after a voluntary nonsuit, those cases support a finding that Sue's

5

nonsuit in this case rendered any question regarding the merits of the underlying summary judgment moot. Because a nonsuit effectively moots the merits of the underlying case, nothing remained to be resolved on appeal, and because the nonsuit occurred after the partial summary judgment was entered, the dismissal foreclosed any right Sue may have had to refile those claims at a later date. Therefore, while Sue's nonsuit did not dispose of James' claims for costs and sanctions, it mooted any possible error by the trial court in rendering the partial summary judgment in favor of James and left Sue nothing to appeal on that point.

## II.    The Trial Court's Award of Attorney Fees as Sanctions

On June 3, 2015, the trial court issued a letter ruling finding that Sue's lawsuit against James for breach of fiduciary duty was frivolous and awarded James $10,000.00 in attorney fees as a sanction.[5] On appeal, Sue contends that the trial court erred in ordering a sanction in James' favor because: (1) James did not argue during the hearing on attorney fees that she pursued her claim against James as harassment or in bad faith;[6] (2) even if he had, there was a proper reason to add James to the Reed Suit;[7] (3) James did not prove the objective or subjective elements to warrant the imposition of a sanction; (4) the fact that the Reed Defendants eventually entered into

---

[5]The trial court's judgment stated, "The Court finds that as to [James], the suit is frivolous and without justification. The Court finds that attorney fees be imposed as an appropriate sanction against [Sue]." The trial court did not enter findings of fact and conclusions of law.

[6]During the hearing, James' trial counsel testified that it was James' "position that that particular lawsuit was a frivolous suit and that [James] should be able to collect his attorney's fees."

[7]Sue maintained that adding James as a party was necessary in order to adequately prosecute her claim against the Reed Defendants because the Reed Defendants were acting as agents for James when they obtained her wage and income information.

6

a settlement agreement with her established that her claims were not frivolous; and (5) James failed to state the proper statutory authority he relied upon in pursuit of attorney fees.[8]

## A.    Standard of Review

Sanctions should not be used as "a weapon . . . to punish those with whose intellect or philosophic viewpoint the trial court finds fault." *Tarrant Cty. v. Chancey*, 942 S.W.2d 151, 155 (Tex. App.—Fort Worth 1997, no writ) (quoting *Dyson Descendant Corp. v. Sonat Expl. Co.*, 861 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1993, no writ)). But an appellate court will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). An assessment of sanctions will be reversed "only if the trial court acted without reference to any

---

[8]Sue provided a bench brief to the trial court in opposition to James' attorney fees award. As an initial matter, we note that Sue's bench brief was filed in the Bill of Review Suit, and not the Reed Suit, yet, the trial court granted attorney fees as sanctions in the Reed Suit, and not the Bill of Review Suit. However, James filed a consolidated reply to Sue's bench brief in both the Bill of Review Suit and the Reed Suit, and the trial court consolidated the attorney fees hearings. Accordingly, we will address them as a consolidated matter and review the records accordingly.

Sue's bench brief stated, in part,

The Defendant is not entitled to recover any of his attorney's fees as a sanction. The fact he won the suit does nothing to show it was groundless, especially given this determination is made at the time the suit is filed. Nor has the Defendant offered any competent evidence that would allow the Court to make a determination that the Plaintiff pursued this matter in bad faith for some improper purpose, such as harassment. In the absence of such evidence the Defendant has failed to carry the burden of proof he must bear, and therefore has failed to prove himself entitled to a fee award as a sanction.

A motion for sanctions must identify the specific statute or rule the offending party allegedly violated. *See Ball v. Rao*, 48 S.W.3d 332, 338 (Tex. App.—Fort Worth 2001, pet. denied). James failed to comply with this requirement; however, Sue did not object to the trial court's award of attorney fees as sanctions based on James' failure to identify the specific statute Sue allegedly violated. To the extent Sue did not present her argument that James failed to provide the trial court with statutory authority, her claim was not preserved for our review. *See* Tex. R. App. P. 33.1. Her remaining claims at trial and on appeal appear to be based on James' failure to prove the necessary elements to enable the trial court to award attorney fees as sanctions. We will therefore address only those claims.

7

guiding rules or principles, such that its ruling was arbitrary or unreasonable." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

### B.     Analysis

#### 1.     Sanctions Pursuant to Rule 13

Sanctions may only be imposed for good cause under Rule 13, the particulars of which must be stated in the order.  TEX. R. CIV. P. 13; *Rudisell v. Paquette*, 89 S.W.3d 233, 237 (Tex. App.—Corpus Christi 2002, no pet.).  The trial court's Rule 13 sanctions order must identify the specific acts or omissions on which the court based the sanctions.  *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 130 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Chancey*, 942 S.W.2d at 155 (trial court's statement that pleading was filed to harass and cause unnecessary delays was too general).  Likewise, a trial court may impose sanctions only for good cause.  TEX. R. CIV. P. 13.  Therefore, a court must include a statement of good cause in the order to support its imposition of sanctions.  *Tarrant Restoration v. TX Arlington Oaks Apts., Ltd.*, 225 S.W.3d 721, 733 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.).

In this case, the trial court did not detail the specifics justifying its imposition of sanctions. Yet, a trial court's failure to do so constitutes an abuse of discretion only if the sanctioned party brought the omission to the attention of the trial court.  *Olibas v. Gomez*, 242 S.W.3d 527, 532 (Tex. App.—El Paso 2007, pet. denied).  Sue did not object to the trial court's failure to explain its ruling in either its letter ruling or its final judgment.  An appellant waives her right to complain of a trial court's failure to specify the grounds for its sanctions order if the appellant did not first bring the omission to the trial court's attention.  TEX. R. APP. P. 33.1; *Birnbaum v. Law Offices of*

8

*G. David Westfall, P.C.*, 120 S.W.3d 470, 475–76 (Tex. App.—Dallas 2003, pet. denied) (trial court erroneously omitted detailed explanation of bases for Rule 13 sanctions, but appellant waived error by not calling it to trial court's attention). Because Sue failed to bring the omission to the trial court's attention, she has waived any complaint on that basis.

However, Sue did not waive her argument that James did not sufficiently prove his entitlement to an award of attorney fees as sanctions. *See* TEX. R. APP. P. 33.1(d); *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 756 (Tex. App.—Dallas 1993, no writ) (appellant may raise a no-evidence point for the first time on appeal in non-jury case involving sanctions); *Van Es v. Frazier*, 230 S.W.3d 770, 784 (Tex. App.—Waco 2007, pet. denied) (no-evidence complaint may be made for first time on appeal where pleadings struck as sanction). Accordingly, we must examine whether the evidence is legally sufficient to support the trial court's imposition of sanctions.

To impose sanctions under Rule 13 of the Texas Rules of Civil Procedure, the movant must establish that the suit was (1) groundless and brought in bad faith or (2) groundless and brought for purposes of harassment. TEX. R. CIV. P. 13. "Groundlessness turns on the legal merits of a claim." *River Oaks Place Council of Co-Owners v. Daly*, 172 S.W.3d 314, 322 (Tex. App.—Corpus Christi 2005, no pet.); *GTE Commc'ns Sys. Corp. v Tanner*, 856 S.W.2d 725 (Tex. 1993) (orig. proceeding). "A party seeking sanctions has the burden of establishing his right to relief." *Tanner*, 856 S.W.2d at 729. Even assuming that Sue's claim against James was groundless,[9] in

---

[9]The Rule defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." TEX. R. CIV. P. 13. A court should presume parties and their counsel filed all papers in good faith, and the party seeking sanctions must overcome that presumption. TEX. R. CIV. P. 13; *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 321–22 (Tex. App.—Texarkana 2006, pet. denied). Because we find that James failed to prove that Sue's claim was brought for the purpose of harassment, we decline to examine whether Sue's claim against James was groundless.

9

order to recover attorney fees as sanctions, James must also show that Sue brought her claim in bad faith or for the purpose of harassment. Bad faith does not exist when a party exercises bad judgment or negligence. Rather, bad faith means "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied); *see Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

"In deciding whether a pleading was filed in bad faith or for the purpose of harassment, the trial court must measure a litigant's conduct at the time the relevant pleading was signed." *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.). Rule 13 generally requires that the trial court hold an evidentiary hearing to make a determination about the motives and credibility of the person signing the petition. *R.M. Dudley Const. Co. v. Dawson*, 258 S.W.3d 694 (Tex. App.—Waco 2008, pet. denied); *Low*, 221 S.W.3d at 613, 617 (referring to trial court's evidentiary hearing on motion for Chapter 10 sanctions); *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 669–70 (Tex. App.—Corpus Christi 2004, no pet.) ("Rule 13 requires that the trial court provide notice and hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person filing the groundless pleading. Without such a hearing, the trial court has no evidence before it to determine that a pleading was filed in bad faith or to harass." (citations omitted)).

Here, the trial court held a hearing on attorney fees, which we presume included the issue of the award of sanctions. During the hearing, the trial court admitted (1) Shannon Happney's

10

curriculum vitae,[10] (2) the parties' final decree of divorce, and (3) a summary of the attorney fees incurred by James during the litigation. In addition, James' counsel testified,

> The first case that was filed was a case that involved Perry Reed, [James'] CPA, and the CPA for both he and Sue Mobley. And Perry Reed apparently got some information from some governmental agency. Jimmy had nothing to do with it. Never had anything to do with it.
> We filed a motion for summary judgment when he was sued saying that in effect that we didn't have anything to do with it, and there was no controverting affidavit filed to that. So it's our position that that particular lawsuit was a frivolous suit and that he should be able to collect his attorney's fees.
> We didn't request any other sanctions, but we did request that he be awarded attorney's fees for defending that case.[11]

While the trial court found, as a matter of law, that Sue's claim against James was meritless, its order awarding attorney fees as sanctions is completely void of the basis upon which the award was made. Likewise, there exists no evidence in the record showing that Sue filed her claim in bad faith or for the purpose of harassment. If, in fact, the trial court awarded sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure, we find its award of sanctions to be erroneous.

### 2. Sanctions Under Chapter 10

A party may also seek sanctions pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002). Chapter 10

---

[10]Happney is the paralegal who assisted James' counsel during the Mobley divorce proceedings and the subsequent litigation. Happney testified as to the attorney fees that were incurred during the litigation between the parties.

[11]During his closing argument, James' counsel argued,

> The first case, the Reed case, obviously it is a [frivolous] lawsuit as it relates to my client, because there's not one single fact issue against him, and there should have been reasonable inquiry before that suit was filed as to what his role, if any -- anything that Mr. Reed may have done that was untoward occurred.
> And so for that reason, we believe that that lawsuit he should recover his attorney's fees in that lawsuit.

provides for an award of sanctions when a party shows (1) that the pleading or motion was brought for an improper purpose, (2) that there were no grounds for the legal arguments advanced, or (3) that the factual allegations or denials lacked evidentiary support. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002); *Low*, 221 S.W.3d at 614–15. Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to "deter repetition of the conduct or comparable conduct by others similarly situated." TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(b) (West 2002). "We construe the phrase 'improper purpose' as the equivalent of 'bad faith' under Rule 13." *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 183–84 (Tex. App.—Texarkana 2011, no pet.).

A trial court may award the prevailing party attorney fees and costs for inconvenience, harassment, and out-of-pocket expenses incurred by the party or caused by the litigation. TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c) (West 2002). When a trial court determines whether sanctions are appropriate, it must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied). In the event a trial court finds that sanctions are appropriate under Chapter 10, it must include in its order a description of the conduct violated and an explanation of the basis for imposition of the sanctions. TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (West 2002); *Univ. of Tex. at Arlington v. Bishop*, 997 S.W.2d 350, 355 (Tex. App.—Fort Worth 1999, pet. denied). The trial court should explain how it determined the amount of sanctions, especially when the sanction is severe. *Low*, 221 S.W.3d at 620–21.

If the trial court entered the award of attorney fees as sanctions pursuant to Chapter 10, it did not include that finding in its order awarding sanctions. That said, the limited evidence presented during the hearing, standing alone, failed to demonstrate that Sue's claim against James was brought for an improper purpose, that there were no grounds for the legal arguments advanced, or that the factual allegations lacked evidentiary support. Likewise, there was no evidence that Sue did not make a reasonable inquiry prior to filing her claim against James. That is not to say that such evidence did not exist—but it was not presented to the trial court.

In the event the trial court granted sanctions pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code, we conclude that it erred.

## III.    Conclusion

The trial court's award of attorney fees as sanctions was erroneous; therefore, we reverse the portion of the trial court's judgment awarding attorney fees as sanctions and render judgment that James take nothing on his claim for attorney fees. We affirm the trial court's partial summary judgment that Sue take nothing on her claims against James.

Ralph K. Burgess
Justice

Date Submitted:       April 29, 2016
Date Decided:         October 26, 2016

13