**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-17-00389-CV**

———————————

**RYAN KELSALL, Appellant**

**V.**

**RACHEL HAISTEN, Appellee**

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-53450**

---

**O P I N I O N**

In this suit affecting the parent-child relationship (SAPCR), Ryan Kelsall appeals the trial court's order awarding statutory attorney's fees and costs to Rachel Haisten for defending Kelsall's frivolously-filed modification petition. In two issues, Kelsall argues that the trial court no longer had jurisdiction over the

case when it issued the order, and alternatively, that the trial court abused its discretion in concluding that his modification petition was filed frivolously.

We affirm.

## Background

Kelsall and Haisten, parents of R.A.K., were divorced December 16, 2010. Since that time, Kelsall has sought various forms of relief from the trial court. This appeal arises out of Kelsall's second suit to modify conservatorship, brought closely on the heels of his first.

In his first modification suit, in addition to seeking primary conservatorship of R.A.K., Kelsall asked the trial court to limit Haisten to supervised visits with R.A.K. The trial court appointed an amicus attorney for R.A.K., and after a year and a half of litigation, signed an agreed modification order pursuant to a settlement reached in mediation. The agreed modification order, signed January 28, 2016, designated Haisten as R.A.K.'s primary managing conservator with the exclusive right to designate his primary residence, increased Kelsall's periods of possession to expanded standard possession, and provided that R.A.K. would continue counseling with his psychologist, Dr. Camille Shea, and Haisten would consult with Dr. Shea regarding a name for R.A.K. to call Haisten's husband other than "daddy."

Just nine months later, Kelsall filed his second modification petition (which he has twice amended), this time pro se, again requesting primary conservatorship of R.A.K. His original petition alleged that:

- Dr. Shea refused to allow Kelsall access to R.A.K.'s medical records;
- Haisten allowed R.A.K.'s stepfather to take R.A.K. to medical appointments alone and to make medical decisions for RAK;
- Haisten refused to allow Kelsall to put R.A.K. on his insurance, in favor of R.A.K.'s stepfather's insurance;
- Haisen "trie[d] to make the stepfather [R.A.K.'s] 'real father' by referring to him as 'daddy' in front of [R.A.K.] to force [R.A.K.] to call him 'daddy,'" causing R.A.K. "confusion and anxiety"; and
- Haisten limit[ed] R.A.K.'s access to Facetime with Kelsall's "other child who is experiencing severe separation anxiety" while R.A.K. is with Haisten.

In addition to primary conservatorship and retroactive support, Kelsall requested that the January 28, 2016 agreed modification order be modified to remove the provision ordering R.A.K. to continue therapy with Dr. Shea, and to enjoin Haisten from allowing R.A.K. to call his stepfather or any significant other "daddy."

Immediately after filing his petition, and before Haisten had answered it, Kelsall began issuing discovery requests, including requests for admissions, amended requests for admissions, and requests for production, and, importantly, a subpoena duces tecum to Premier Psychological Services seeking production of documents and communications between Dr. Shea and R.A.K. (or Haisten in

connection with R.A.K.'s therapy), and a "subpoena for witness deposition/subpoena duces tecum" to Haisten.

Haisten answered, denying the allegations in Kelsall's petition, alleging that Kelsall's petition was filed frivolously and was designed to harass her, and requesting statutory attorney's fees pursuant to the Texas Family Code.

Less than a week later, Kelsall again amended his modification petition,[1] this time asking for sole conservatorship of R.A.K. For the first time, Kelsall alleged that Haisten had "abused" R.A.K. Specifically, he alleged that R.A.K. told him that Haisten had spanked him.

Kelsall also filed several motions to strike Haisten's answer and issued supplemental requests for production and inspection, adding a request for Haisten's psychiatric records.

In response to Kelsall's discovery requests, Haisten filed a motion to quash her deposition and a motion for protective order to prevent Premier Psychological Services from releasing then 6-year-old R.A.K.'s psychiatric records. Kelsall filed several motions to strike Haisten's motion for protective order.

After a hearing, the trial court granted both Haisten's motion for protective order (protecting R.A.K.'s records from disclosure to Kelsall or Haisten), and her

---

[1]  This was Kelsall's second amended petition in this second modification suit; he filed his first amended petition ten days after filing his original petition.

4

motion to quash. Two days later, Kelsall nonsuited "all claims in this case against the Respondent." The trial court signed the nonsuit on January 24, 2017.

Haisten then filed a motion to set trial on her request for attorney's fees, to which Kelsall responded by filing a motion to dismiss for lack of jurisdiction. On May 15, 2017, before trial on Haisten's attorney's fees claim, the trial court held a hearing on Kelsall's motion to dismiss. Rejecting Kelsall's argument that the nonsuit was a final order, and thus that its plenary jurisdiction to hear Haisten's attorney's fees claim had expired, the trial court denied the motion to dismiss for lack of jurisdiction, and the parties proceeded to trial.

At trial, Haisten testified that Kelsall began asking for R.A.K.'s psychiatric records while Kelsall's first modification suit was pending, and that immediately after she and Kelsall settled that suit (and ostensibly the psychiatric records issue), Kelsall resumed his efforts to get the records both from Haisten and from Dr. Shea. Unsuccessful, Kelsall filed Health Insurance Portability and Accountability Act of 1996 (HIPAA) complaints against both Premier Psychological Services and Dr. Shea. He then filed a complaint against Dr. Shea's license with the Texas Medical Board, which resulted in her having to discontinue R.A.K.'s therapy pending an investigation of the claims.

Haisten testified that, other than her request for attorney's fees in her answer, she had not filed "anything affirmative" against Kelsall, but had only

responded to his filings. She also testified as to Kelsall's motivation in seeking another modification: "I think he wanted the records. I think he was upset that he wouldn't get his way, so to speak, in the first litigation. And I think this was—he tried several different ways of getting the records. And, so, when those avenues failed, he decided that he would bring suit on his own."

Kelsall also testified. He repeated numerous times throughout his testimony, both on direct and cross examination, that he filed this second modification suit because he is entitled to R.A.K.'s psychiatric records, which he believes will show that Haisten spanked R.A.K. He stated that he became concerned for R.A.K.'s safety after R.A.K. told him that Haisten had spanked him. He also testified that he filed suit in part because Haisten permitted R.A.K. to call his stepfather "dad," and because Haisten frustrated his efforts to have R.A.K. Facetime with his other child.

On cross-examination, Kelsall answered "yes" when asked, after "all of these concerns that you claim that you had about your son, like the spanking and things like that, you non-suited the claim two days after you didn't get these medical records, didn't you, sir?" He explained that the financial burden of possibly having to hire an attorney going forward caused him to abandon his claim for sole conservatorship of R.A.K.

In addition to this suit, the record also reflects that on September 15, 2016, Kelsall filed a pro se petition for enforcement by contempt (which he has since

amended three times) seeking repayment from Haisten for his alleged overpayment of R.A.K.'s health insurance.

After the trial, the court signed an "Order [] Regarding Frivolous Filing and Attorney's Fees," finding that Kelsall's modification petition was "filed frivolously and brought in bad faith," awarding Haisten $11,827.50 in attorney's fees and costs, and stating that "all relief requested in this case and not expressly granted is denied." *See* TEX. FAM. CODE ANN. § 156.005 (West Supp. 2017) ("[I]f the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall state that finding in the order and assess attorney's fees as costs against the offending party.").

## Jurisdiction

We first address Kelsall's argument that the trial court did not have jurisdiction over Haisten's claim for attorney's fees, because "if it did not, then we do not." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 95 (Tex. 2009). Kelsall argues that the trial court's 30-day period of plenary jurisdiction began when it signed his nonsuit, and thus had already expired when it awarded attorney's fees. We conclude that, regardless of whether the nonsuit purported to be a final judgment triggering the trial court's plenary jurisdiction period, the trial court retained jurisdiction over Haisten's request for attorney's fees because it was an

affirmative claim for relief that was pending before Kelsall's nonsuit. *See* TEX. R. CIV. P. 162.

## A. Standard of Review and Applicable Law

We review a trial court's subject-matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Schroeder v. LND Mgmt., LLC*, 446 S.W.3d 94, 97 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review.").

Texas Rule of Civil Procedure 162 provides that a plaintiff may take a nonsuit at any time before introducing all of his evidence other than rebuttal evidence. TEX. R. CIV. P. 162. A plaintiff's nonsuit is effective immediately upon filing. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862–63 (Tex. 2010). A trial court's granting of a nonsuit is a ministerial act. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (orig. proceeding); *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex. 1982). A trial court generally has no discretion to refuse to sign an order for dismissal once notice of nonsuit has been filed. *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997); *see Joachim*, 315 S.W.3d at 862.

However, rule 162 expressly limits the right to nonsuit an entire cause when the defendant has a claim for affirmative relief pending. *Bennett*, 960 S.W.2d at 38;

8

*see also* TEX. R. CIV. P. 162 (nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief. . . ."). Thus, while a nonsuit has the effect of terminating a case from the moment the motion is filed, it does not affect the right of an adverse party to be heard on a pending claim for affirmative relief. *Referente v. City View Courtyard, L.P.*, 477 S.W.3d 882, 886 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Joachim*, 315 S.W.3d at 862 (nonsuit renders merits of nonsuited case moot). In other words, "[p]arties have an absolute right to nonsuit *their own* claims, but not *someone else's* claims they are trying to avoid." *Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 37 (Tex. 2008) (citation omitted).

## B.  Analysis

In his first issue, Kelsall argues that the trial court lacked jurisdiction to render its May 19, 2017 order awarding Haisten attorney's fees because its plenary jurisdiction had expired.[2] According to Kelsall, the trial court's 30-day period of plenary jurisdiction began on January 24, 2017 when it signed the nonsuit, which he contends was the final judgment in this case.  This is incorrect.

---

[2]  A trial court retains jurisdiction over a case for 30 days after it signs a final judgment or order. TEX. R. CIV. P. 329b(d). After the 30 days run, the trial court loses its plenary power, and lacks jurisdiction to act. *Fuentes v. Zaragoza*, 534 S.W.3d 658, 662 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

A nonsuit by one party to a SAPCR does not extinguish another party's unresolved "pending claim[s] for affirmative relief." *See* TEX. R. CIV. P. 162; *see also Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008) ("Although a plaintiff decides which of its claims to pursue or abandon, that decision does not control the fate of a non-moving party's independent claims for affirmative relief."). Thus, the trial court does not lose its plenary jurisdiction over a SAPCR because one party nonsuits its claims if another party has a pending claim for affirmative relief. Therefore, we must determine whether Haisten's request for attorney's fees in her answer constitutes a claim for affirmative relief, such that it would have survived a nonsuit.[3]

A claim for affirmative relief is one "on which the claimant could recover compensation or relief even if the plaintiff abandons his cause of action." *Ledbetter*, 251 S.W.3d at 38 (quoting *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 101 (Tex. 2006) (punctuation omitted). "Texas courts have held that '[a]n affirmative claim, stated in an answer, for recovery of attorney's fees for preparation and prosecution of a defense constitutes a counterclaim,'" and as such, survives a nonsuit. *Bacon Tomsons, Ltd.*

---

[3]     Because neither party raised it, we do not address the question whether Family Code Chapter 155 provides an alternate basis for the SAPCR court's jurisdiction over Haisten's claims. *See* TEX. FAM. CODE ANN. §§ 155.001(a), 155.002 (West 2014) (SAPCR court retains continuing, exclusive jurisdiction of the parties and matters provided by the Family Code).

*v. Chrisjo Energy, Inc.*, No. 01-15-00305-CV, 2016 WL 4217254, at *10 (Tex. App.—Houston [1st Dist.] Aug. 9, 2016, no pet.) (mem. op.) (quoting *In re C.A.S.*, 128 S.W.3d 681, 686 (Tex. App.—Dallas 2003, no pet.)); *see also Villafani*, 251 S.W.3d at 469 ("[A] plaintiff's nonsuit cannot extinguish a defendant's counterclaim for costs and attorney's fees."); *Nolte v. Flournoy*, 348 S.W.3d 262, 267 (Tex. App.—Texarkana 2011, pet. denied) (claim for attorney's fees included in answer was counterclaim seeking affirmative relief); *Dean Foods Co. v. Anderson*, 178 S.W.3d 449, 456 (Tex. App.—Amarillo 2005, pet. denied) (plaintiff's non-suit did not deprive trial court of jurisdiction to hear request for attorney's fees included in defendant's answer).

Kelsall acknowledges that an affirmative claim for attorney's fees can be found in an answer, but argues that the language in Haisten's answer fails to sufficiently plead a claim because, according to Kelsall, it does not reference a statute that provides for attorney's fees and does not explain the basis of her entitlement to relief. *See* TEX. R. CIV. P. 47 (claim for relief must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"); *see also, e.g.*, *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (request for attorney's fees in answer gave "fair and adequate notice . . . sufficient for [defendant] to prepare a defense" and thus survived nonsuit); *Grant v. Hope Vill. Apts.*,

11

No. 09-09-00527-CV, 2010 WL 4262001, at *3 (Tex. App.—Beaumont Oct. 28, 2010, pet. denied) (mem. op.) ("[W]hile a claim for affirmative relief can theoretically be found in an answer, a claim for affirmative relief is still required to contain 'a short statement of the cause of action sufficient to give fair notice of the claim involved [.]'" (citing TEX. R. CIV. P. 47)).

Contrary to Kelsall's assertion, Haisten's answer does identify Family Code section 156.005 as the statutory basis for her claim, both directly and by implication.[4] In the paragraph entitled "Frivolous Claim," Haisten alleged that Kelsall filed his modification suit frivolously to harass her, and she requested "a finding to this effect pursuant to §156.004 of the Tex. Fam. Code," and an award of attorney's fees. In the next paragraph, entitled "Attorney's Fees, Expenses, Costs and Interest," as well as in her prayer, Haisten essentially repeated these

---

[4]    We assume Haisten intended to reference Family Code section 156.005—instead of section 156.004, which makes the Texas Rules of Civil Procedure applicable to modification suits—as her requests track section 156.005's language exactly. *See* TEX. FAM. CODE ANN. § 156.005 (West Supp. 2017) ("[I]f the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall state that finding in the order and assess attorney's fees as costs against the offending party."); *see also, e.g.*, *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000) (defendant's answer gave fair notice that it sought to invoke punitive-damages cap, even though defendant cited wrong statute); *UL, Inc. v. Pruneda*, No. 01-09-00169-CV, 2010 WL 5060638, at *10 (Tex. App.—Houston [1st Dist.] Dec. 9, 2010, no pet.) (mem. op.) (following Texas's "fair notice" standard for pleading, "we give effect to the substance of [plaintiff]'s original petition regardless of which section of [a statute] [plaintiff] cited in the pleading.").

allegations and requested attorney's fees and costs. This gave Kelsall fair and adequate notice of Haisten's section 156.005 attorney's fee claim. *See, e.g.*, *Town of Flower Mound v. Upper Trinity Reg'l Water Dist.*, 178 S.W.3d 841, 844 (Tex. App.—Fort Worth 2005, no pet.) ("A request for attorney's fees made in accordance with [C]ivil [P]ractice and [R]emedies [C]ode section 37.009 is a claim for affirmative relief authorizing a party to be heard under the provisions of rule 162."); *see also Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915–16 (Tex. 2015) (plea in answer and counterclaim for "attorney's fees . . . pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code," and general request for attorney's fees in prayer constituted affirmative claim for attorney's fees to support fee award).

Kelsall next argues that even if Haisten's request for attorney's fees and costs was an affirmative claim, it did not survive the nonsuit because Haisten did not pay the requisite filing fee for a counterclaim. *See C.A.S.*, 128 S.W.3d at 686. But payment of a filing fee "is not generally a prerequisite to jurisdiction, nor does the failure to pay such fee[] deprive the trial court of jurisdiction over a case." *Nolte*, 348 S.W.3d at 268 (quoting *J. Allen Family Partners, Ltd. v. Swain*, No. 04-09-00384-CV, 2010 WL 2103228, at *3 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.)). Therefore, even though a defendant does not have an unconditional right to be heard on counterclaims absent the payment of a filing fee,

a trial court may, in its discretion, consider such counterclaims without payment of the statutory filing fee. *Nolte*, 348 S.W.3d at 268; *see also In re J.A.H.*, No. 05-14-01330-CV, 2016 WL 3536676, at *5 (Tex. App.—Dallas June 27, 2016, no pet.) (mem. op.) (failure to pay counterclaim fee did not deprive trial court of jurisdiction over claim for attorney's fees pending at time of nonsuit).

Haisten's claim for attorney's fees and costs was an independent claim for affirmative relief pending at the time of Kelsall's nonsuit, and as such, was not extinguished by the nonsuit. *See Villafani*, 251 S.W.3d at 469; *Bacon Tomsons*, 2016 WL 4217254, at *10. Thus, the trial court retained jurisdiction to decide it. *See* TEX. R. CIV. P. 162; *Bacon Tomsons*, 2016 WL 4217254, at *11.

## Attorney's Fees for Frivolous Modification Suit

In his second issue, Kelsall argues that the trial court erred in finding that he filed his amended modification petition frivolously and awarding Haisten attorney's fees and costs.[5]

### A.     Standard of Review

We review the trial court's award of attorney's fees under Family Code section 156.005 for an abuse of discretion. *See Watts v. Oliver*, 396 S.W.3d 124, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Under an abuse-of-discretion-standard, we consider the evidence in the light most favorable to the trial

---

[5]     Kelsall does not challenge the amount of attorney's fees the trial court awarded.

14

court's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If more than a scintilla of evidence supports the trial court's decision, the legal sufficiency challenge fails. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). We will reverse if the trial court acted without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Mangin v. Wendt*, 480 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

## B.    Analysis

Kelsall argues that the trial court erred in concluding that he filed his modification petition frivolously. *See* TEX. FAM. CODE ANN. § 156.005 ("[I]f the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall state that finding in the order and assess attorney's fees as costs against the offending party.").

"A 'frivolous' suit is generally understood to mean one that does not have a reasonable basis in law or fact." *Thielemann v. Blinn Bd. of Trustees*, No. 01-14-00595-CV, 2015 WL 1247018, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.) (mem. op.) (citing *Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991)); *see generally* TEX. R. CIV. P. 13 (authorizing sanctions against party or party's attorney for filing "groundless" pleading, defining "groundless" pleading as having "no basis in law or fact"). In

determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Thielemann*, 2015 WL 1247018, at *2; *Mobley v. Mobley*, 506 S.W.3d 87, 96 (Tex. App.—Texarkana 2016, no pet.); *see also McLaurin v. McLaurin*, No. 01-14-00710-CV, 2016 WL 3023020, at *13 (Tex. App.—Houston [1st Dist.] May 26, 2016, pet. denied) (mem. op.) ("[A] claim is groundless if its proponent knows that it lacks any factual basis whatsoever when she asserts it."); *Foust v. Hefner*, No. 07-13-00331-CV, 2014 WL 3928781, at *3 (Tex. App.—Amarillo Aug. 12, 2014, no pet.) (mem. op.) ("[T]he pertinent window is that revealing what counsel thought, knew, or should have known when he signed the pleading or motion.").

Generally, courts presume that pleadings and other papers are filed in good faith. *Unifund*, 299 S.W.3d at 97. The party seeking sanctions bears the burden of overcoming the presumption. *Id.* Accordingly, we must determine whether the trial court abused its discretion in concluding that Haisten overcame the presumption that Kelsall's suit was filed with good faith concern for R.A.K.'s safety and that the facts he alleged in his pleadings were based on a reasonable investigation under the circumstances.

After a review of the record, we hold that the trial court did not abuse its discretion in concluding that Kelsall filed his modification petition frivolously.

First, Kelsall failed to file an affidavit as required by Family Code section 156.102, stating facts to support his claim that R.A.K.'s safety may be endangered by continuing to live with Haisten. *See, e.g.*, *Stashak v. Stashak*, No. 14-02-00700-CV, 2003 WL 21230406, at \*2 (Tex. App.—Houston [14th Dist.] May 29, 2003, no pet.) (mem. op.) (affirming award of attorney's fees under section 156.005 as sanctions for failure to file adequate section 156.102 affidavit in modification suit); *In re A.S.M.*, 172 S.W.3d 710, 717–18 (Tex. App.—Fort Worth 2005, no pet.) (failure to file section 156.102 affidavit with modification petition supported award of attorney's fees under Texas Rule of Civil Procedure 13 for filing suit "groundless and brought in bad faith and for the sole purpose of harassment").

Specifically, because Kelsall brought this suit within one year of the trial court's January 28, 2016 order giving Haisten the exclusive right to designate R.A.K.'s primary residence, section 156.102 required him to attach to his petition an affidavit alleging, with supporting facts, that R.A.K.'s "present environment may endanger his physical health or significantly impair his emotional development" (or other matters not applicable here). *See* TEX. FAM. CODE ANN. § 156.102(a), (b) (West 2014). Neither Kelsall's original petition, nor his first amended petition, nor even his second amended petition complied with this requirement. *See A.S.M.*, 172 S.W.3d at 717–18; *Stashak*, 2003 WL 21230406, at

17

*2. In fact, not only did Kelsall fail to file an affidavit alleging endangerment, but a review of the pleadings shows that he made no allegation whatsoever that R.A.K.'s safety was endangered, much less that Haisten had "abused" R.A.K. by spanking him, until his second amended petition. *See Thielemann*, 2015 WL 1247018, at *2 (in ordering sanctions, trial court must examine facts available to litigant and circumstances existing when he filed pleading); *Mobley*, 506 S.W.3d at 96 (same).

Kelsall's failure to meet the statutory requirement of attaching an affidavit of endangerment to his petition is of particular importance here, given the purpose of section 156.102's heightened pleading standard, which is to prevent disruption to the lives of children by subjecting them to meritless modification suits. *See In re A.D.*, 474 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (purpose of section 156.102's verified pleading is "to promote stability in conservatorship of children by discouraging relitigation of custodial issues within a short period after the custody order"); *see also Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("The philosophical underpinning of section 156.102 is clear: the Legislature intended to promote stability in the conservatorship of children of divorced parents.").

Second, the record reflects that Kelsall engaged in a pattern of harassing behavior that the trial court could reasonably have determined was intended to deplete Haisten's resources and force her to succumb to his demands for access to

R.A.K.'s psychiatric records. *See Silverman v. Johnson*, No. 03-08-00271-CV, 2009 WL 2902716, at \*7–8 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op.) (mother's testimony that father's modification suit was part of pattern of behavior intended to "drain [mother's] resources through endless litigation" supported section 156.005 attorney's fees award). Kelsall filed this modification suit a mere nine months after he had agreed to an order marking the end of a year and a half spent litigating his first modification suit. It required Haisten, who sought nothing beyond repayment of the money she spent defending it, to respond to a barrage of discovery requests—most of which were filed before she had even answered—and ultimately to file a motion to protect R.A.K.'s psychiatric records from being disclosed.

Further, the record includes Kelsall's pro se petition for enforcement by contempt (also with multiple amendments) as well as Kelsall's own trial testimony that he filed HIPAA complaints against Premier Psychological Services and Dr. Shea, and a complaint to the licensing board against Dr. Shea, for their refusal to release R.A.K.'s psychiatric records to him. This suggests that his modification suits are part of a broader pattern of harassment, supporting the trial court's section 156.005 award. *See Silverman*, 2009 WL 2902716, at \*7–8 (father's filing of two grievances against mother's counsel, two grievances against mental health professionals involved in litigation, Child Protective Services (CPS) report, and

19

declaratory-judgment action against mother "suggest[ed] that [his] motion to modify was consistent with an overall pattern of harassing behavior directed at prolonging litigation and draining [mother]'s resources," supporting section 156.005 attorney's fees award).

There is also evidence that Kelsall filed this modification suit as a means to procure R.A.K.'s psychiatric records, rather than for its stated purposed of obtaining primary (and later, sole) conservatorship of R.A.K. In fact, Kelsall himself testified at trial that he filed suit to obtain the records. Further, his dismissal of his suit for sole custody filed two days after the trial court issued an order protecting R.A.K.'s medical records belies his assertion that his quest for the records was motivated by genuine concern for R.A.K.'s safety. Thus, the trial court could reasonably have concluded that Kelsall nonsuited when it became clear that harassing Haisten would not enable him to access R.A.K.'s psychiatric records.

The conclusion that Kelsall filed this suit as a means of obtaining R.A.K.'s records rather than out of genuine concern for R.A.K.'s safety is bolstered by the complete lack of evidence that Haisten endangered R.A.K.'s safety even if she had in fact spanked him—an allegation that was not proven at trial. *Cf.* TEX. FAM. CODE ANN. § 151.001(e)(1) (West 2014) (parent may use corporal punishment for reasonable discipline of child); *Moreno v. Perez*, 363 S.W.3d 725, 740 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Unless limited by court order, a parent

20

has the right, during periods of possession of their child, to exercise 'reasonable discipline,' including the use of corporal punishment.") (citations omitted); *In re A.S.*, 261 S.W.3d 76, 88 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (even "spankings of a child that leave 'marks' or visible bruises 24 hours after the spanking do not constitute sufficient evidence to demonstrate that a parent has engaged in conduct that endangered a child's physical or emotional well-being").

On this record, we cannot conclude that the trial court abused its discretion in awarding Haisten attorney's fees pursuant to Family Code section 156.005.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.