**AFFIRMED; Opinion Filed December 3, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01140-CV

**SHANE LANGSTON AND REBECCA LANGSTON, Appellants**

**V.**

**FREESE & GOSS, PLLC., RICHARD A. FREESE, TIM K. GOSS, SHEILA M. BOSSIER, DENNIS C. SWEET, SWEET & FREESE, PLLC, Appellees**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-08251**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Stoddart

Shane and Rebecca Langston[1] appeal from the trial court's denial of their motion for sanctions. In two issues, appellants question (1) "whether a trial judge in Texas has the unbridled, unlimited, non-appealable discretion to deny sanctions to the victims of blatantly false, frivolous, malicious, vindictive, bad faith filings intended to harass, annoy, and intimidate" and (2) "whether the trial court's Order denying sanctions was arbitrary, capricious, unsupported by the facts and/or unwarranted by existing law or any good faith argument to change existing law; thus, justifying reversal and remand to determine the amount of sanctions." We affirm the trial court's order.

---

[1] Because appellants have the same surname, we refer to them by their first names in this opinion.

This appeal stems from satellite litigation that began when appellees sought to depose appellants. Appellants were not parties to the underlying lawsuit, but they are related to and were law partners with a party to the underlying lawsuit, Charles McRae. An issue in the underlying litigation was whether a state court in Texas could exercise personal jurisdiction over McRae, a Mississippi lawyer. Rebecca is McRae's daughter and Shane is her husband. Rebecca and Shane, both Mississippi attorneys, also practiced law with McRae in Mississippi. Appellants represented to the trial court that they would be seeking admission to the State Bar of Texas.

On December 17, 2014, Jeffrey Tillotson, counsel for appellees, issued subpoenas for the oral depositions of Shane and Rebecca. The subpoenas stated the depositions would occur at Tillotson's office on December 22, 2014. Tillotson also issued subpoenas duces tecum to appellants. On December 18, in response to an email inquiry about whether Tillotson intended to take the depositions on December 22, Tillotson stated he was unsure whether appellants had been served. The following day, Michael Napoli, counsel for Charles McRae, replied to the email chain: "Last I heard, the Langstons have not been served. Therefore, it is my understanding that there will be no deposition on Monday. Please let me know if I am incorrect." Tillotson replied the same afternoon: "Correct."

On Saturday, December 20 at 6:17 a.m., Tillotson emailed Napoli stating the process server confirmed the subpoenas were served on Friday morning. He continued: "I do not know if a motion to quash will be filed or if he will comply and show up but I will let you know if I hear anything." A few hours later, Napoli emailed Tillotson, stating he learned Rebecca's uncle to whom she was very close died, he "strongly suspect[ed]" appellants would travel to Mississippi to be with their family, and suggested they reschedule the depositions. Napoli also heard appellants were not served, but found the subpoenas on their front door. Tillotson replied he also understood there was a death in the family.

On Sunday, December 21, 2014 at 6:17 p.m., Napoli emailed McRae's motion to quash appellants' depositions to Tillotson. The motion asserted numerous reasons why the depositions should be quashed, most of which relate to the timing of the depositions. Napoli's email states "there are real questions as to whether the Langstons were actually served with a subpoena." Appellants did not appear for their depositions on December 22. The record shows they did not travel to Mississippi until December 27 and remained in the Dallas-area with their children during the Christmas holiday.

On December 23, 2014, appellees filed a motion for contempt against appellants "arising from their willful failure to appear and give testimony at their properly noticed and subpoenaed depositions." The motion set forth the reasons appellees believed appellants' testimony was relevant to establishing McRae's Texas connections for purposes of establishing jurisdiction. Mike Bowers, another lawyer representing appellees, signed the motion for contempt. The subpoenas directed to appellants were attached to the motion as well as the returns of service in which the process server averred he served the subpoenas on appellants at their home address on December 19, 2014 at 8:00 a.m. The process server also executed affidavits of due diligence, which were attached to the motion for contempt, explaining the challenges he encountered when attempting to serve appellants. The affidavits stated that on December 17, 2014 at 1:45 p.m., the process server confirmed the address on the subpoenas was a "good address" with the "housesitter who stated [appellants were] not home." The process server left his card for appellants to call him. The following day at 5:30 p.m., he attempted service again, but appellants were "not in per little girl who answered the door and stated she did not think [appellants were] in. I asked her to look so she closed the door and left. Stood there 10 minutes with no one returning to the door. Left card on door and on voice box outside gate." The following day, December 19, at 7:40 a.m., the process server returned again and found his card still on the "voice box." The affidavit states:

–3–

> Just before 8:00 am, a grey SUV drove toward the gate from the inside. I got out of my car which was parked in the street directly across from the gate and walked toward the vehicle with papers visibly in hand. A female was driving with a male in the passenger seat, both resembling [appellants]. After the gates fully opened, they looked at me then slowly passed me and stopped at the stop sign 25 feet away. I yelled to them and was in sight of both rearview mirrors then they drove away. I delivered the document by putting it between the glass and iron on the front door.

The motion for contempt also included certificates of non-appearance at the depositions from the court reporter.

On December 31, 2014, the trial court issued an order to show cause stating a hearing on a motion for contempt would be held on January 29, 2015, to determine whether appellants "should be held in contempt for failing to appear for their depositions on December 22, 2014." Subsequently, appellees withdrew the motion for contempt the day before the scheduled hearing.

On January 2, 2015, the trial court conducted a hearing on McRae's motion to quash the deposition subpoenas. Napoli, appearing on behalf of McRae, stated the motion probably was moot because he objected to the specific date of the depositions, not to the depositions occurring at some time. Napoli stated this was part of a larger scheduling problem among the lawyers in the case. He informed the trial court that appellants received fewer than three business days' notice of the deposition, which was insufficient, particularly in light of the death of a family member. Bowers, appearing as counsel for appellees, countered that the short notice period was because appellees "went through Herculean efforts to get Mr. and Mrs. Langston served with . . . subpoenas for their depositions" and the short notice period "falls at the[ir] feet" because they avoided service on numerous occasions. Although appellants received an email about the January 2 hearing, they did not appear.

On January 7, 2015, appellants filed their own motion to quash the subpoenas and/or for protective order, response to appellees' motion for contempt, and a motion for sanctions against Tillotson and Bowers for abuse of discovery and frivolous filings. They subsequently filed a

–4–

supplemental motion for sanctions. Appellants complained about three documents: the subpoenas, the motion for contempt, and appellees' response to the motion to quash. More specifically, appellants asserted sanctions were proper because the subpoenas duces tecum were overly broad, appellees' counsel falsely claimed the subpoenas were served on appellants, and appellees gave less than one business days' notice of the subpoenas; appellees ignored the automatic stay triggered by McRae's motion to quash and filed a frivolous response; and appellees filed a frivolous motion for contempt for appellants' failure to appear at the deposition, made factual and legal misrepresentations to the trial court, and conducted a "pretend" deposition when they had knowledge of the automatic stay.

At a hearing two days later, the trial court granted their motion to quash the document requests. The court ordered the oral depositions proceed, but limited them to one hour each. Appellants sat for depositions on January 16. Rebecca was deposed for sixteen minutes and Shane for thirty minutes. Shane testified appellants had "absolutely zero knowledge of any facts relating to jurisdiction over Chuck McRae here in Texas." Transcripts from appellants' depositions are in the record.

The trial court conducted a hearing on appellants' motion and supplemental motion for sanctions on March 19, 2015. Appellants testified at the hearing. Shane testified appellants sought sanctions because "of some eight filings that [appellees] made that were in my opinion very frivolous, now including the deposition, the multiple deposition subpoenas, the motion for contempt, the response to the motion to quash that has [sic] caused my wife and I [sic] to have to devote literally over a hundred hours in defending the - - the broad, unreasonable subpoenas that were issued that they never withdrew and in defending ourselves against the motion for contempt." He testified appellees' motion for contempt included "serious allegations, accusing us of criminal

conduct, unethical conduct, and violating the Texas Lawyer Creed that we have to disclose that on our Bar application."

Shane testified Tillotson initially subpoenaed his deposition for a date when Tillotson knew appellants would be on vacation, which was a "pattern they began to try to harass and intimidate my wife and me." Four days after appellants returned from vacation, Tillotson issued a second set of subpoenas for appellants' depositions (the subpoenas for depositions on December 22). Shane testified appellants were not served with the subpoenas, although he found them attached to their front door on December 19. Shane explained he believed this was not effective service of process. He stated that appellees may have had difficulty serving appellants because they live in a gated community and "the little voicebox machine wasn't working at the time." Shane conceded on cross-examination that the process server filed an affidavit stating he personally served appellants and the affidavit indicates the process server believed appellants refused service by driving away after seeing the process server.

Shane testified appellants did not appear for their depositions on December 22 because: (1) they were not served and (2) there was a pending motion to quash. He also testified appellees' motion for contempt was "replete with serious misrepresentations" and false statements. Shane walked through the motion during his testimony and illuminated the statements he believed were untrue.

Rebecca testified she saw the process server outside of her house on December 19, but thought he was the caterer arriving for her Christmas party. She was in the car to take her children to school and made a motion to the man indicating she would be right back. She did not believe the process server indicated to her that he was attempting to serve papers, she did not see papers in his hand, and "we were. . . astonished to not find him there when we came back." Rebecca

testified appellants did not immediately find the subpoenas on the front door because they enter the house through the garage.

Rebecca testified that after her Christmas party on the night of Friday, December 19, she learned her uncle passed away. She believed the wake and funeral would occur the following Monday and Tuesday so they would take place before Christmas. However, because one of her uncle's children could not fly to Mississippi in time for a funeral before Christmas and the family did not want to have a funeral on December 24, 25, or 26, the funeral occurred on December 27. Appellants did not learn about the delay until Sunday night. This information was conveyed to Tillotson.

At the end of the hearing, the trial court stated it found "no factual basis for the motion for contempt . . . or at least that the allegations contained therein enjoy no apparent factual basis," and it vacated its show cause order. The trial court subsequently issued an order denying the motion for sanctions.

LAW & ANALYSIS

Appellants ask us to review the trial court's order denying their motion for sanctions made pursuant to rule of civil procedure 13 and chapter 10 of the civil practice and remedies code. A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). We may reverse the trial court's ruling on a motion for sanctions only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam). The party moving for sanctions

bears the burden of overcoming a presumption that pleadings and other papers are filed in good faith.  *See id.*; *see also Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007).

Chapter 10 allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support.  Section 10.001 provides that the signing of a pleading constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, after reasonable inquiry: (1) the pleading is not being presented for any improper purpose, including to harass or cause unnecessary delay or needless increase in the cost of litigation; (2) each claim, defense, or legal contention is warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law; (3) each factual contention has evidentiary support or is likely to have evidentiary support after reasonable investigation or discovery; and (4) each denial is warranted by the evidence or is reasonably based on a lack of information or belief.  TEX. CIV. PRAC. & REM. CODE ANN. § 10.001.  If a court determines that a pleading was signed in violation of Section 10.001, sanctions may be imposed on the signer, a party represented by the signer, or both.  *Id.* § 10.004(a).

Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both, who files a pleading, motion, or other paper that is groundless and either brought in bad faith or for the purpose of harassment.  TEX. R. CIV. P. 13.  A court may not impose sanctions under Rule 13 "except for good cause, the particulars of which must be stated in the sanction order."  *Id.*; *Keith v. Solls*, 256 S.W.3d 912, 916 (Tex. App.—Dallas 2008, no pet.).  The party seeking sanctions bears the burden of overcoming the good faith presumption under Rule 13, and must (1) demonstrate that the opposing party's filings are groundless, and (2) show that the pleadings were filed either in bad faith or for the purpose of harassment.  *Marquez v. Weadon*, No. 05-17-00276-CV, 2018 WL 3829267, at *3 (Tex. App.—Dallas Aug. 13, 2018, no pet.) (mem. op.) (citing *Mobley v. Mobley*, 506 S.W.3d 87, 94 (Tex. App.—Texarkana 2016, no pet.)).  When

determining whether Rule 13 sanctions are appropriate, a trial court examines the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Marquez*, 2018 WL 3829267, at *5 (citing *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.)).

Appellants assert the subpoenas for oral depositions and duces tecum as well as the motion for contempt were frivolous and created grounds for sanctions because the subpoenas were not properly served, the subpoenas were delivered with only three days' notice, the document requests were overly broad, and the motion for contempt contained factual and legal misrepresentations. The record includes conflicting evidence about whether the subpoenas were properly served. Email correspondence between the attorneys shows Tillotson initially believed appellants were not served and later learned they were. Bowers told the trial court they underwent "Herculean efforts" to effect service, which appellants avoided, thus explaining why the subpoenas were dated December 17, but were not delivered to appellants' home address until December 19. The process server averred he served the subpoenas on appellants at their home and also detailed the difficulty he encountered serving appellants, including appellants driving away after seeing him. Appellants testified they did not attempt to avoid service and explained they believed the process server was the caterer who would still be at their home when they returned from taking their children to school.

Additionally, there is conflicting evidence about whether appellants, if properly served, could have attended the depositions on December 22. Their counsel informed Tillotson about a death in the family and his strong suspicion that appellants would be in Mississippi on December 22. However, appellants did not travel to Mississippi for the funeral until approximately December 27 and were in the Dallas-area on December 22.

Appellants complain the document requests were overly broad, However, appellees provided some explanation as to the basis for requesting information from appellants (determining McRae's connections, if any, to Texas).

To the extent appellants' brief recites statements made by appellees in their motion for contempt and then announces those statements are "FALSE" without citing supporting evidence in the record, we conclude they have not shown the falsity of these statements. Appellants bear the burden to show the trial court abused its discretion by denying their motion for sanctions, *see Cire*, 134 S.W.3d at 838, and simply stating facts recited in a motion are "FALSE" does not meet that burden. Additionally, to the extent appellants assert appellees' motion for contempt "blatantly misrepresent[ed] case law to convince the trial court that Appellants were effectively served," appellants merely reference arguments made in their motion to quash and for sanctions in the trial court. They make no argument in their brief showing appellees misrepresented case law or that the trial court abused its discretion by denying their motion for sanctions on this basis. "A claim of error on appeal must be argued in the party's brief; it is insufficient simply to refer the appellate court to the party's trial court arguments . . ." *AT&T Corp. v. Sw. Bell Tel. Co*., No. 05-99-00186-CV, 2000 WL 14711, at *7 (Tex. App.—Dallas Jan. 11, 2000, no pet.); *see* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and the record).

Based on the conflicting information in the record related to the subpoenas and motion to quash, we cannot say appellants overcame the presumption that the pleadings and other papers were filed in good faith, *see Unifund CCR Partners*, 299 S.W.3d at 97, and the trial court abused its discretion by reaching the same conclusion, *see Cire*, 134 S.W.3d at 838.[2] While we consider it concerning that appellees proceeded with the depositions on December 22 and filed a motion for

---

[2] We express no opinion about whether serving subpoenas are document request fall within the ambit of rule 13 and chapter 10.

contempt after being notified of McRae's motion to quash, appellants did not show the motion for contempt was being presented for an improper purpose, in bad faith, or for the purpose of harassment. *See* TEX. CIV. PRAC. & REM CODE ANN. § 10.001; *Marquez*, 2018 WL 3829267, at *3.

Appellants also complain about appellees' response to the motion to quash. Appellants' brief includes a footnote stating: "Appellants' [sic] inadvertently failed to designate for inclusion in the clerk's record the December 31, 2014 response to McRae's Motion to Quash filed by Appellees. [Appellants immediately will request that the Clerk supplement the record with this Response. . . ]." Appellants attached the document to their brief. More than two months after filing their brief, appellants filed a reply brief in which they again noted that appellees' response to the motion to quash was "inadvertently omitted from designation of the record," and stated it was attached to their original brief. No supplemental clerk's record was filed in this Court and appellees' response to the motion to quash is not in the record before us. "The attachment of documents as appendices to an appellate brief is not formal inclusion in the appellate record." *Sung Sik Choi v. Juggernaut Transp., Inc*., No. 05-16-01386-CV, 2017 WL 2729907, at *2 (Tex. App.—Dallas June 26, 2017, no pet.) (mem. op.) (citing *Brumley v. Image Cleaners & Laundry, Inc*., No. 05–05–01478–CV, 2006 WL 1727753, at *2 (Tex. App. —Dallas June 26, 2006, no pet.) (mem. op.); *Perry v. Kroger Stores Store No. 119*, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no pet.)).

After reviewing the entire record, including the timing and substance of the pleadings and the testimony at the sanctions hearing, we conclude that there is some evidence to support the trial court's decision not to impose sanctions. Therefore, we conclude appellants have not shown the trial court abused its discretion by denying their motion for sanctions. We overrule appellants' two issues.

We affirm the trial court's order denying appellants' motion for sanctions.



/Craig Stoddart/
CRAIG STODDART
JUSTICE

171140F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHANE LANGSTON AND REBECCA
LANGSTON, Appellants

No. 05-17-01140-CV          V.

FREESE & GOSS, PLLC., RICHARD A.
FREESE, TIM K. GOSS, SHEILA M.
BOSSIER, DENNIS C. SWEET, SWEET
& FREESE, PLLC, Appellees

On Appeal from the 95th Judicial District
Ct, Dallas County, Texas
Trial Court Cause No. DC-14-08251.
Opinion delivered by Justice Stoddart.
Justices Whitehill and Boatright
participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellants' motion for sanctions is **AFFIRMED**.

It is **ORDERED** that appellees Freese & Goss, PLLC, Richard A. Freese, Time K. Goss, Sheila M. Bossier, Dennis C. Sweet, Sweet & Freese, PLLC recover their costs of this appeal from appellants Shane Langston and Rebecca Langston.

Judgment entered this 3rd day of December, 2018.