

# NUMBER 13-24-00111-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF K.D., P.D., V.D., AND E.D., CHILDREN

---

## ON APPEAL FROM THE 444TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Silva**

Appellant Ramon M. Diana, proceeding pro se, appeals: (1) a final order in a suit modifying the parent-child relationship; (2) an order enforcing the division of property by contempt; and (3) an order enforcing child support.[1] We affirm.

---

[1] This appeal arises from trial court cause number 2022-DCL-02849 in the 444th District Court of Cameron County, Texas. We previously granted mandamus relief in favor of Diana in a separate original

## I.    BACKGROUND

Diana and appellee Elvia Karina Cordova-Diana are divorced with four minor children. While their divorce decree was originally entered in Bexar County, Texas, the parties' ongoing disputes arising from the decree were transferred to Cameron County, Texas. In Cameron County, Cordova-Diana filed a petition to modify the parent-child relationship, a petition seeking to enforce the division of the marital property as ordered by the parties' final decree of divorce, and a motion for the enforcement of child support. Diana filed competing pleadings. During the litigation, the trial court appointed an amicus attorney, Angela P. Nix, to assist the trial court with the matters at issue in the case. After an evidentiary hearing to the bench, the trial court found in favor of Cordova-Diana on all matters. This appeal ensued.

## II.    PRELIMINARY MATTERS

We have previously addressed and issued rulings on numerous motions during the pendency of this appeal; however, we carried several motions or specific requests for relief with the case to consider them in conjunction with the merits of the appeal. Accordingly, at the present time, we address Cordova-Diana's motion to dismiss the appeal, the parties' requests for sanctions against each other, and Diana's motion to take

---

proceeding arising from this same matter. *See In re Diana*, No. 13-24-00287-CV, 2024 WL 3221597, at *1 (Tex. App.—Corpus Christi–Edinburg June 28, 2024, orig. proceeding) (mem. op.). Diana also filed a separate petition for writ of mandamus regarding other orders issued in this same trial court cause number which is docketed in our appellate cause number 13-25-00236-CV. By separate memorandum opinion issued this same day, we have denied relief in that original proceeding. *See In re Diana*, No. 13-25-00236-CV, 2025 WL _____, at *1 (Tex. App.—Corpus Christi–Edinburg June 23, 2025, orig. proceeding) (mem. op.).

2

judicial notice of various documents.[2]  In short, we deny all pending requests and motions.

## A.    Diana's Brief

Cordova-Diana asserts that Diana "has flagrantly violated the briefing rules and has failed to correct [] numerous defects after being given ample opportunity to do so." Thus, she requests that we dismiss the appeal or affirm the trial court's rulings. As Cordova-Diana notes, Diana filed a brief on June 24, 2024, which was substantially noncompliant with the appellate rules. He filed a first amended brief on June 28, 2024, which was again substantially noncompliant. He filed a second amended brief on July 9, 2024, which provides the basis for Cordova-Diana's contentions.

Diana has represented himself in the proceedings below and in this appeal. We are required to hold pro se litigants to the same standards as licensed attorneys; thus, pro se litigants must comply with all applicable laws and rules of procedure. *Zhao v. Sea Rock Inc.*, 659 S.W.3d 119, 128 (Tex. App.—El Paso 2022, pet. denied); *Manning v. Johnson*, 642 S.W.3d 871, 884 (Tex. App.—Texarkana 2021, no pet.). Otherwise, pro se litigants "would be given an unfair advantage over litigants represented by counsel." *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978).

"The Texas Rules of Appellate Procedure require adequate briefing." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010); *see Bertucci v.*

---

[2] Specifically, Cordova-Diana filed a "Motion to Dismiss and for Sanctions" and a "Response To [Diana's] Emergency Motion For Temporary Relief To Stay Further Filings Pending Appeal" which included a request for sanctions against Diana; Diana filed a "Response To [Cordova-Diana's] Response To Emergency Motion For Temporary Relief" which included a request for sanctions against Cordova-Diana; Diana filed a "Motion To Strike [Cordova-Diana's] Brief, Request For Sanctions, And Opposition To Attorney's Fees Motion" which included a request for sanctions against Cordova-Diana; and Diana filed an amended "Notice Regarding Violations Of Stay Order, Procedural Irregularities, And Judicial Misconduct" which included a motion for sanctions against Cordova-Diana.

*Watkins*, 709 S.W.3d 534, 541 (Tex. 2025). Rule 38.1(i) requires the brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Gespa Nicar., S.A. v. Recom AG*, 705 S.W.3d 362, 377 (Tex. App.—El Paso 2024, pet. denied) (collecting cases regarding inadequate briefing). The "failure to comply with these rules can result in waiver." *Bertucci*, 709 S.W.3d at 541; *see Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015).

Nevertheless, "[w]e construe the Rules of Appellate Procedure liberally, so that decisions turn on substance rather than procedural technicality." *In re S.V.*, 697 S.W.3d 659, 662 (Tex. 2024) (per curiam) (quoting *Garza v. Garcia*, 137 S.W.3d 36, 38 (Tex. 2004)). Thus, we are required to construe briefs reasonably but liberally so as not to waive the right to appellate review. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (per curiam). Further, we remain mindful that substantial compliance with appellate briefing requirements is considered sufficient. *See* TEX. R. APP. P. 38.9.

Cordova-Diana is correct that Diana's brief is deficient in several respects, but we decline to dismiss the appeal. *See Bolanos v. Purple Goat, LLC*, 649 S.W.3d 753, 758 (Tex. App.—El Paso 2022, no pet.) (addressing an appellate complaint in the interest of justice despite an inadequate brief lacking appropriate record citations). We will address the sufficiency of Diana's brief as necessary throughout this memorandum opinion.

## B.    The Record

Cordova-Diana contends that Diana has failed to provide a complete record in

4

support of his contentions. "The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record." TEX. R. APP. P. 34.1. In terms of the clerk's record, absent a request from one of the parties, only the items listed in Rule 34.5(a) are included therein. *See id.* R. 34.5. For the reporter's record, the appellant must request the official court reporter to prepare the reporter's record, together with any exhibits to be included. *See id.* R. 34.6(b)(1). The appellant may request a partial reporter's record, in which case the appellant must include in its request a statement of the points or issues to be presented on appeal. *See id.* R. 34.6(c)(1). The appellant will then be limited to those points or issues, and the appellate court must presume that the partial reporter's record constitutes the entire record for purposes of reviewing the stated points or issues. *See id.* R. 34.6(c)(1), (4). If any relevant item has been omitted from either the clerk's record or the reporter's record, "the trial court, the appellate court, or any party may by letter direct" the trial court clerk or the official court reporter "to prepare, certify, and file in the appellate court a [supplemental clerk's record or reporter's record] containing the omitted [item or items]." *Id.* R. 34.5(c), 34.6(d).

It is the appellant's responsibility to bring a complete record before the court that shows the right to relief, or stated otherwise, a record that enables us to determine whether appellant's issues have merit.[3] *Paske v. Fitzgerald*, 499 S.W.3d 465, 470 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 727

---

[3] We note that the former rules of appellate procedure expressly incorporated this principle; however, that provision of the rules was eliminated in 2011. *See* former TEX. R. APP. P. 50(d), *repealed* 2011. There has been some question regarding the correct application of this principle given this change. *See In re Marriage of Comstock*, 639 S.W.3d 118, 144 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (Goodman, J., dissenting).

(Tex. App.—Dallas 2014, no pet.); *see also In re E.G.*, No. 13-24-00040-CV, 2024 WL 2064576, at *9 (Tex. App.—Corpus Christi–Edinburg May 9, 2024, no pet.) (mem. op.); *Deaguero v. Comm'n for Lawyer Discipline*, No. 05-22-01102-CV, 2024 WL 1326486, at *3 (Tex. App.—Dallas Mar. 28, 2024, no pet.) (mem. op.); *Charles v. Dickinson Indep. Sch. Dist.*, No. 01-20-00215-CV, 2022 WL 904434, at *18 (Tex. App.—Houston [1st Dist.] Mar. 29, 2022, no pet.) (mem. op.); *In re Marriage of Hultquist & Cook*, No. 14-19-00896-CV, 2021 WL 2252129, at *1 (Tex. App.—Houston [14th Dist.] June 3, 2021, no pet.) (mem. op.).

In this case, the appellate record includes a clerk's record; three supplemental clerk's records; a reporter's record of a hearing held on February 1, 2024; a supplemental reporter's record of a hearing held on October 28, 2024; and a supplemental reporter's record of a hearing held on November 13, 2024. We will confine our review of Diana's complaints to the appellate record that is properly before the Court under the foregoing principles.

## C. Sanctions

The underlying litigation in the trial court and this appeal have been marked by contentious, rancorous, and highly adversarial proceedings. Not surprisingly, Cordova-Diana and Diana have each requested that we impose sanctions against the other. Cordova-Diana asserts, *inter alia*, that Diana has filed groundless pleadings and motions for the purpose of delay, that he has grossly misstated obviously important and material facts, and that he has presented a misleading view of the record. *See generally* TEX. R. APP. P. 45. Diana contends, among other things, that Cordova-Diana has engaged in bad

6

faith litigation and tactics, has failed to comply with various procedural requirements, and has presented frivolous and vexatious claims.

We have carefully considered the parties' claims, and while we appreciate the seriousness of the allegations, we deny the parties' requests for sanctions at this time and we focus instead on the merits of the claims at issue in this appeal.

## D.  Supplementation

Diana filed an "Amended Notice Regarding Violations of Stay Order, Procedural Irregularities, and Judicial Misconduct" requesting "to supplement the record before this Honorable Court by formally incorporating the procedural documents that serve as direct evidence of the claims asserted in [his] previously filed **Notice Regarding Violations of Stay Order, Procedural Irregularities, and Judicial Misconduct**." Diana requests that we allow him to supplement the record with items attached to this pleading and that we take judicial notice of these "official court records."

It is well established that documents attached to an appellate brief or pleading as exhibits or appendices are not part of the formal record on appeal[4] and may generally not be considered by the appellate court. *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 305 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *Fuentes v. Union de Pasteurizadores de Juarez S.A. de C.V.*, 527 S.W.3d 492, 502 (Tex. App.—El Paso 2017, no pet.); *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas

---

[4] Pursuant to recent amendments to the appellate rules, an appellant in a civil case may elect to file an appendix in lieu of a clerk's record if, within ten days after the notice of appeal is filed, the appellant also files a notice of election with the trial court and with the court of appeals. Tex. R. App. P. 34.5a. Diana did not file such a notice in this Court.

2005, pet. denied). These documents were not properly presented to the trial court, and accordingly, we decline Diana's request to consider the proffered items as part of the appellate record and to take judicial notice thereof.

### III.   STANDARD OF REVIEW

"Most appealable issues in a family law case, including property division, conservatorship, and child support, are reviewed under the abuse of discretion standard." *Jardon v. Pfister*, 593 S.W.3d 810, 819 (Tex. App.—El Paso 2019, no pet.). An abuse of discretion occurs when a trial court acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles. *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (per curiam); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

In family law cases in which we apply the abuse of discretion standard of review, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are instead relevant factors in assessing whether the trial court abused its discretion. *Eckhardt v. Eckhardt*, 695 S.W.3d 883, 887–88 (Tex. App.—Houston [1st Dist.] 2024, no pet.); *In re Featherston*, 675 S.W.3d 330, 333 (Tex. App.—Amarillo 2023, no pet.); *Cervenka v. Cervenka*, 672 S.W.3d 814, 818 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). If there is some evidence of a substantive and probative character that supports the trial court's order, then there is no abuse of discretion. *In re K.L.C.*, 672 S.W.3d 734, 743 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). When determining whether an abuse of discretion exists because the trial court's decision is not supported by legally or factually sufficient evidence, we consider whether the trial court had sufficient

8

information upon which to exercise its discretion and whether it erred in its application of that discretion. *Eckhardt*, 695 S.W.3d at 888; *In re Featherston*, 675 S.W.3d at 333.

## IV.    ANALYSIS

Diana presents nine issues for our review. We address them *seriatim* and we apply the foregoing standard of review unless noted otherwise.

### A.    Hearing

In his first issue, Diana asserts that the trial court abused its discretion "by failing to timely schedule a hearing concerning the urgent enforcement of visitation rights." According to Diana, "[t]he trial court's inaction has led to prolonged deprivation of parental rights, adversely impacting the children's psychological and emotional well-being, and stunting their developmental stability." Diana contends that the trial court's failure to act violated the Texas Family Code "which mandates frequent and continuing contact between children and parents." *See* TEX. FAM. CODE ANN. § 153.001 (delineating the public policy of the state regarding the parent-child relationship).

In his brief, Diana fails to identify any motion for which the trial court failed to timely schedule a hearing and fails to identify any requests that he made for the trial court to schedule a hearing. We conclude that this issue has been inadequately briefed. *See* TEX. R. APP. P. 38.1(i) (stating that appellant's brief must contain "clear and concise argument for contentions made, with appropriate citations to authorities and to the record"); *Pedroza v. Tenet Healthcare Corp.*, 555 S.W.3d 608, 612 (Tex. App.—El Paso 2018, no pet.) ("When an issue is inadequately briefed, and lacks a substantive analysis . . . it presents nothing for our review."). Accordingly, we overrule Diana's first issue.

9

**B. Enforcement**

In his second issue, Diana asserts that there is insufficient evidence to support the trial court's conclusion that Diana failed to refinance and sell the marital residence under Texas Family Code §§ 9.001 and 9.002. *See* Tex. Fam. Code Ann. §§ 9.001, 9.002. Diana contends, in short, that he has complied with the divorce decree's terms for refinancing and selling the property. He concedes; however, that the sale of the property "has not concluded due to external factors beyond [his] control." Diana does not identify the "external factors" or otherwise explain this contention.

Texas Family Code § 9.001 authorizes a party to request enforcement of a divorce decree's division of property. *See id.* § 9.001(a). The court that entered the divorce decree "retains the power to enforce the property division" provided therein. *Id.* § 9.002; *see Everett v. Everett*, 421 S.W.3d 918, 920 (Tex. App.—El Paso 2014, no pet.). The ruling on a post-divorce motion for enforcement of a divorce decree is generally reviewed for abuse of discretion. *Gomez v. Gomez*, 632 S.W.3d 4, 8 (Tex. App.—El Paso 2020, no pet.); *Everett*, 421 S.W.3d at 920.

The parties entered an agreed mediated settlement agreement on May 2, 2019, and the trial court signed an "Agreed Final Decree of Divorce" on September 5, 2019. The divorce decree includes the following provisions relevant to this issue:

**PROVISIONS FOR SALE OF RESIDENCE**

The Parties have agreed that the marital home awarded to [Diana] on this Agreed Final Decree of Divorce shall be his sole property, subject to the provisions stated in this Agreed Final Decree of Divorce. In the event[] the marital property awarded to [Diana] is not refinanced completely out of the name of [Cordova-Diana] within eighteen (18) months of the entry of the mediated settlement agreement and judge[']s docket notes granting the

10

divorce on May 2, 2019, the following shall occur:

> IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon . . . shall be sold . . . .

The decree further required Diana to make all payments pertaining to the property during the pendency of the sale and provided him with the exclusive right to enjoy the use and possession of the property until closing.

On February 1, 2024, the trial court heard Cordova-Diana's petition for the enforcement of division of property by contempt. On February 16, 2024, the trial court issued an order concluding that Diana failed to comply with the divorce decree's requirements for him to: (1) refinance the home in Bexar County within eighteen months of the entry of the mediated settlement agreement; and (2) list the property with a duly licensed real estate broker, sell the property, and continue to make all payments of principal, interest, taxes, and insurance on the property.

At trial, Diana acknowledged that he had not refinanced the property but professed that he was still attempting to do so. The exhibits introduced at trial include: (1) a January 11, 2024 notice of intent to foreclose on the property stating that the mortgage was in default because payments had not been made since December 1, 2023; and (2) a December 14, 2023 letter to the parties from counsel for the property's homeowner's association stating that the assessments for the property remained in arrears, as previously advised on May 20, 2023.

Benjamin Paz, a realtor, was appointed by the trial court to sell the marital home. He testified that to sell the property, he was required to obtain "a signed [']executive right to sell['] agreement, sellers' disclosures, and the documentation signed by both parties

11

giving information for the lenders, social security numbers, and the amount due[] so that it can all be verified." He explained that he contacted Cordova-Diana and Diana to obtain these documents and information, and Cordova-Diana furnished that documentation to him that same day; however, Diana did not respond to his request. Paz further testified that Diana had not provided him with access to the property to take listing photographs. Paz confirmed that he would be successful in selling the home if Diana cooperated; however, Paz advised that the value of the house had probably declined due to market conditions in the period between when he was first appointed to sell the property and the time of his testimony. On cross-examination by Diana, Paz agreed that he had recommended painting the house and making minor changes to ensure that it was marketable.

Based on the foregoing evidence, we conclude some evidence of a substantive and probative character supports the trial court's conclusion that Diana failed to refinance and sell the marital property as required by the divorce decree. *See In re K.L.C.*, 672 S.W.3d at 743; *Gomez*, 632 S.W.3d at 8; *Everett*, 421 S.W.3d at 920. We overrule Diana's second issue.

## C. Clarifying Order

In his third issue, Diana asserts that the trial court abused its discretion by failing to issue a clarifying order under Texas Family Code § 9.008 before taking action to enforce the divorce decree. *See* TEX. FAM. CODE ANN. § 9.008. Diana contends that the divorce "decree's terms concerning the refinancing and sale of the marital home, along with the payment obligations were potentially unclear," and "[n]o clarifying order was

12

issued, which is necessary to ensure enforceable terms before any contempt proceedings."

The trial court may clarify the property division in a divorce decree by more precisely specifying the manner of carrying out that property division; however, the court may not alter the substantive division of the property. *Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018); *In re Marriage of Cote*, 668 S.W.3d 891, 897 (Tex. App.—El Paso 2023, no pet.); *see generally* TEX. FAM. CODE ANN. §§ 9.006, 9.007, 9.008. A clarification order must be consistent with the prior judgment. *In re Marriage of Cote*, 668 S.W.3d at 897. A clarifying order under § 9.008 is only permissible when a court finds that the original form of property division is not specific enough to be enforceable by contempt. *See* TEX. FAM. CODE ANN § 9.008(b); *Higgins v. Higgins*, 514 S.W.3d 382, 388 (Tex. App.—San Antonio 2017, pet. denied). We review the trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree under an abuse-of-discretion standard. *LeBlanc v. LeBlanc*, 676 S.W.3d 703, 706 (Tex. App.—El Paso 2023, no pet.).

Here, Diana alleges only that the divorce decree's provisions were "potentially unclear," and he has not explained how the original form of the division of property was not specific enough to be enforceable by contempt. *See* TEX. FAM. CODE ANN. § 9.008(b). Accordingly, this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *Pedroza*, 555 S.W.3d at 612. We overrule Diana's third issue.

D.     **Frivolous Litigation**

In his fourth issue, Diana asserts that Cordova-Diana "engage[d] in frivolous litigation tactics under Texas Family Code § 156.005 by filing unjustified child protective

13

orders and modification suits." According to Diana, Cordova-Diana's filings were made frivolously and for purposes of harassment rather than to protect the children's welfare. Diana further asserts that Cordova-Diana's claims against him were ultimately dismissed by Child Protective Services (CPS) for lack of merit. In support of his contention, Diana points generally to a temporary restraining order, CPS dismissal notices, and a final order on child support adjustments from 2021. Diana offers no further argument in favor of this issue.

Under the Texas Family Code, "if the court finds that a suit for modification is filed frivolously or is designed to harass a party, the court shall state that finding in the order and assess attorney's fees as costs against the offending party." TEX. FAM. CODE ANN. § 156.005. A "frivolous" pleading is one that does not have a reasonable basis in law or fact. *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 243 (Tex. App.—Eastland 2019, no pet.); *Kelsall v. Haisten*, 564 S.W.3d 157, 165 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "In determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading." *Kelsall*, 564 S.W.3d at 165. Generally, courts presume that pleadings and other papers are filed in good faith. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *In re Guardianship of Browning*, 642 S.W.3d 598, 607 (Tex. App.—Eastland 2022, pet. denied); *Kelsall*, 564 S.W.3d at 165. The party seeking sanctions bears the burden of overcoming this presumption. *Nath*, 446 S.W.3d at 361; *In re Guardianship of Browning*, 642 S.W.3d at 607; *Kelsall*, 564 S.W.3d at 165.

Diana does not identify where in the record he sought to impose sanctions against

14

Cordova-Diana under Texas Family Code § 156.005. We note that he requested attorney's fees for a "frivolous suit" in his motion for no evidence summary judgment on Cordova-Diana's motion for the enforcement of property division by contempt; however, he did not cite § 156.005 in support of that request. In any event, in the absence of other argument and evidence regarding Cordova-Diana's state of mind, Diana has not overcome the presumption that Cordova-Diana filed her pleadings and motions in good faith. *See Nath*, 446 S.W.3d at 361; *In re Guardianship of Browning*, 642 S.W.3d at 607; *Kelsall*, 564 S.W.3d at 165. Accordingly, we overrule Diana's fourth issue.

**E.     Child Support**

In his fifth issue, Diana contends that the trial court failed to enforce and adjust child support orders in compliance with Texas Family Code §§ 154.129 and 156.401. *See* TEX. FAM. CODE ANN. §§ 154.129, 156.401. Diana argues, in short, that the trial court failed to consider his travel deductions and obligations toward other dependent children. In this regard, Diana testified that he should have been awarded "a credit for $100 for travel and expense[s] because it was ordered" in the 2019 final decree of divorce. Diana further argued that, in setting the monthly child support amount, the trial court failed to consider that he was required to pay child support for another child. Specifically, Diana alleged that he had an eighteen-year-old child who lived in Puerto Rico, and that he was required to make child support payments for that child until the child attained twenty-one years of age.

Diana does not address the guidelines for calculating monthly child support obligations, nor does he explain how the trial court's child support order fails to comply

15

therewith. *See, e.g.*, TEX. FAM. CODE ANN. §§ 154.122(a), 154.061(a); *Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.). Further, Diana did not adduce evidence in support of his request for travel deductions or deductions for other child support obligations. Under these circumstances, the trial court did not abuse its discretion by failing to consider any alleged travel deductions or child support obligations for other children. *See Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *Cervenka*, 672 S.W.3d at 818. We overrule Diana's fifth issue.

## F.    Mediation

In his sixth issue, Diana asserts that the trial court failed to properly manage the mediation process by denying his motion for continuance and prematurely proceeding with a final hearing. Diana asserts that the trial court's error "result[ed] in procedural injustice and the need for judicial review and remedial actions under Texas Civil Practice and Remedies Code § 154.021." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.021 (governing the referral of pending disputes for resolution by an alternative dispute resolution procedure). Diana alleges that the trial court proceeded despite "the absence of critical witnesses," and the trial court's error in denying his motion for continuance was inconsistent with case law requiring "all procedural steps [to be] meticulously followed to protect the best interests of the child and uphold the integrity of judicial processes."

We review a trial court's order denying a motion for continuance for an abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Tran v. Hoang*, 703 S.W.3d 419, 423 (Tex. App.—El Paso 2023, no pet.); *Bock v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 675 S.W.3d 36, 44 (Tex. App.—San Antonio

2023, no pet.); *Guzman v. City of Bellville*, 640 S.W.3d 352, 357 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Texas Rule of Civil Procedure 251 provides that a motion for continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251; *see Tran*, 703 S.W.3d at 423–24; *In re J.A.R.*, 696 S.W.3d 245, 260–61 (Tex. App.—Houston [14th Dist.] 2024, pet. denied). "A motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit." *Tran*, 703 S.W.3d at 423–24 (quoting *Serrano v. Ryan's Crossing Apts.*, 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied)); *see In re Commitment of Gagliardo*, 664 S.W.3d 405, 406 (Tex. App.—Tyler 2022, pet. denied). When a motion for continuance does not comply with Rule 251, appellate courts generally presume the trial judge did not abuse its discretion in denying the motion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *In re Marriage of Harrison*, 557 S.W.3d 99, 117 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). An oral motion for a continuance does not preserve error. *In re Marriage of Harrison*, 557 S.W.3d at 117; *Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d 159, 173 (Tex. App.—Tyler 2000, pet. denied). When a motion for continuance is premised on the inability to secure testimony, the movant must support its motion for continuance with an affidavit containing specific information about the required testimony. TEX. R. CIV. P. 252; *see In re R.A.L.*, 291 S.W.3d 438, 447 (Tex. App.—Texarkana 2009, no pet.).

Diana asserts that he filed a written motion for the continuation of mediation on January 31, 2024; however, that motion for continuance is not contained in the clerk's

17

record or in the three supplemental clerk's records. At the hearing on February 10, 2024, the trial court entertained extensive arguments regarding Diana's motion for continuance from the parties, and ultimately denied Diana's motion. Because the record fails to contain Diana's motion for continuance, we are unable to determine if Diana's motion was properly verified and if he presented specific facts supporting sufficient cause for a continuance either in general or premised on his alleged need to secure witness testimony. *See* TEX. R. CIV. P. 251, 252. To the extent that Diana may rely on his oral presentation of his motion to establish error, the oral motion would not preserve error. *See In re Marriage of Harrison*, 557 S.W.3d at 118. On this record, we cannot conclude that the trial court acted arbitrarily or unreasonably in denying Diana's motion for continuance. We overrule Diana's sixth issue.

## G.    Amicus Attorney's Fees

In his seventh issue, Diana argues that the amicus attorney's fees should be adjusted to a fifty-fifty split. Diana alleges that the amicus attorney refused to meet with him individually, refused to meet with him and the minor children together, failed to inspect the children's home environment, did not interview witnesses, and committed additional transgressions. Diana asserts that "it is inappropriate for [him] to bear the full financial burden of the amicus attorney's fees" due to these "substantial failures," and thus, "[t]he fees should be adjusted to a 50/50 split between the parties, considering [that Cordova-Diana] requested the appointment and the amicus attorney did not fulfill their statutory duties."

The Texas Family Code authorizes the trial court to appoint an amicus attorney in

18

a suit affecting the parent-child relationship when the best interest of the children is an issue. *See* TEX. FAM. CODE ANN. § 107.021; *In re Scheller*, 325 S.W.3d 640, 645 (Tex. 2010) (orig. proceeding) (per curiam). An amicus attorney is a court-appointed attorney "whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." TEX. FAM. CODE ANN. § 107.001(1). Thus, an amicus attorney is not appointed to assist one parent or the other. *See id.*; *Zeifman v. Nowlin*, 322 S.W.3d 804, 808–09 (Tex. App.—Austin 2010, no pet.) (stating that an amicus attorney appointed by the court in a suit affecting the parent-child relationship has no duty of care to either parent). Under the Family Code, an attorney appointed as an amicus attorney is "entitled to reasonable fees and expenses in an amount set by the court and ordered to be paid by one or more parties to the suit." TEX. FAM. CODE ANN. § 107.023(a). We review the trial court's award of amicus fees in a suit affecting the parent-child relationship for an abuse of discretion. *In re R.H.W. III*, 542 S.W.3d 724, 743 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Nix presented an affidavit in support of her request for amicus attorney's fees. She testified that a reasonable and necessary fee for the work she performed on the case was $250 per hour. The affidavit itemizes the activities that she performed as amicus, the date that the activities occurred, and the time expended on the activities. Nix testified that she spent 37.75 hours on the case. She explained that 12.75 of those hours were "attributable to both parties," and that 25.00 of those hours were "attributable to [Diana] alone." Nix testified that Cordova-Diana made a payment of $1,500 to her at the inception of the case; that Cordova-Diana's balance due to her was $343.75; and that Diana's total balance due

19

to her was $7,843.75. At trial, Nix explained that she was requesting that the payment of her fees be attributed as stated because Diana "has not tried to facilitate this matter at all and has largely wasted the [trial c]ourt's time instead of paying attention to co-parenting and reunification therapy with his children." The trial court's final order allocated payment of the amicus fees as Nix requested, and thus stated that Nix was entitled to attorney's fees in the amount of $7,843.75 from Diana and $343.75 from Cordova-Diana.

Diana contends, in relevant part, that the amicus attorney "failed to fulfill [her] duties" under Texas Family Code § 107.0045. *See* TEX. FAM. CODE ANN. § 107.0045. Section 107.0045 provides that "[a]n attorney ad litem who fails to perform the duties required by [§§] 107.003 and 107.004 is subject to disciplinary action under Subchapter E, Chapter 81, Government Code." *Id.* Diana introduced no evidence in support of his allegations that Nix failed in her duties as amicus, and we perceive none in the record before us. Nor has he explained why any such alleged failure, which would result in disciplinary action, should affect the allocation of responsibility for the payment of the amicus attorney's fees.

And, while Diana asserts that Cordova-Diana requested the appointment of an amicus attorney, and thus should pay a larger share of the amicus attorney's fees, we note that an amicus serves the court, not the parties, *see id.* § 107.001(1), and the Family Code expressly authorizes the inequal allocation of responsibility for fees. *See id.* § 107.023(a). In any event, we conclude that the trial court did not act arbitrarily or unreasonably by ordering Diana to pay a disproportionate share of Nix's fees, particularly given Nix's testimony regarding his actions in prolonging the litigation. *See In re R.H.B.*,

20

660 S.W.3d 136, 150–51 (Tex. App.—San Antonio 2022, no pet.) (combined app. & orig. proceeding [mand. denied]). We overrule Diana's seventh issue.

## H.    Legal Fees

In his eighth issue, which is somewhat unclear, Diana argues that Cordova-Diana's request for attorney's fees "lacks justification and evidence." Diana contends it would be inequitable to award Cordova-Diana's attorney's fees against him because she unnecessarily prolonged the litigation and increased costs for both parties.

The Texas Family Code provides for an award of attorney's fees and expenses in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 106.002. The trial court has broad discretion to award attorney's fees and costs in a suit affecting the parent-child relationship. *See id.*; *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996); *Banakar v. Krause*, 674 S.W.3d 564, 580 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *In re J.K.R.*, 658 S.W.3d 354, 364 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.). A "prevailing-party determination is but one factor in a trial court's analysis of an attorney's fee award." *In re R.E.S.*, 482 S.W.3d 584, 587 (Tex. App.—San Antonio 2015, no pet.).

In a fee-shifting analysis, a claimant seeking an award of attorney's fees must prove the reasonableness and necessity of the requested attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). The supreme court has held that sufficient evidence for the recovery of attorney's fees "includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for

each person performing such services." *Id.* at 498, 502.

Here, the trial court possessed discretion to award Cordova-Diana her attorney's fees. Not only was Cordova-Diana the substantially prevailing party, but Nix also testified that Diana—not Cordova-Diana—unreasonably increased the duration, and thereby costs, of the litigation. *See* Tex. Fam. Code Ann. § 106.002; *Bruni*, 924 S.W.2d at 368. Under these circumstances, we conclude that the trial court did not err in granting Cordova-Diana's request for an award of attorney's fees.

We next examine the evidence Cordova-Diana submitted in support of her request. By affidavit, Cordova-Diana's counsel testified that she charged $300 hourly, and that her hourly rate represented a customary and reasonable fee charged for similar legal services in Cameron County, Texas. She averred that she had spent 83.9 hours working on the case, and thus the value of her attorney's fees was $22,577.50. She testified that these fees were necessary and reasonable. Her eleven-page affidavit includes an itemized list of the services she performed, the dates that she performed the services, and the amount of time that she spent on each of the services. She further stated that the case was "undesirable" for some attorneys because Diana "was very high conflict, making the retention of an attorney more difficult." We conclude that Cordova-Diana presented sufficient evidence to support the fee award sought. *See Rohrmoos Venture*, 578 S.W.3d at 498, 502; *In re J.K.R.*, 658 S.W.3d at 364. We overrule Diana's eighth issue.[5]

[5] In examining this issue, we note that neither party referenced Texas Family Code § 157.167 in addressing the award of attorney's fees. *See* Tex. Fam. Code Ann. § 157.167(a). Under this section, a movant is entitled to reasonable attorney's fees and court costs in an enforcement action when the court finds that the respondent has failed to make child support payments. *See id.* Absent a finding of good cause to award fees otherwise, the award of attorney's fees and costs under § 157.167 is mandatory. *See id.*; *In re Marriage of Featherston*, 675 S.W.3d 330, 336–37 (Tex. App.—Amarillo 2023, no pet.). Here, Cordova-

22

## I. Open Courts

In his ninth and final issue, Diana contends that "[t]he trial court's refusal to schedule timely hearings and enforce visitation rights effectively denie[d him] access to the courts, contravening the principles enshrined in Article I, [§] 13 of the Texas Constitution." According to Diana, this error hindered his "ability to seek redress for injuries caused by [Cordova-Diana's] non-compliance with court orders, which is contrary to the intent of the Open Courts Doctrine."

Article 1, § 13 of the Texas Constitution includes the following "open courts" provision: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This provision requires that: "1) courts must actually be open and operating; 2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and 3) the Legislature may not abrogate well-established common law causes of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Cent. Appraisal Dist. of Rockwall Cnty. v. Lall*, 924 S.W.2d 686, 689 (Tex. 1996); *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993). The open courts provision "applies only to statutory restrictions of a cognizable common law cause of action." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 410 (Tex. 1997) (quoting *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex. 1995)); *LTTS Charter Sch., Inc. v. C2 Const.,*

---

Diana moved to enforce Diana's child support payments, and the trial court concluded that Diana failed to make a substantial number of child support payments. The record supports a conclusion that the trial court was required to order Diana to pay Cordova-Diana's attorney's fees for the child support enforcement action. *See* TEX. FAM. CODE ANN. § 157.167(a); *In re R.H.B.*, 660 S.W.3d 136, 156 (Tex. App.—San Antonio 2022, no pet.).

*Inc.*, 358 S.W.3d 725, 744 (Tex. App.—Dallas 2011, pet. denied). The open courts provision does not apply to suits for divorce because they are not common law causes of action and are instead statutorily created and regulated proceedings. *Waite v. Waite*, 64 S.W.3d 217, 222–23 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Capellen v. Capellen*, 888 S.W.2d 539, 545–46 (Tex. App.—El Paso 1994, writ denied).

Here, the underlying proceeding is a suit for divorce, thus the open courts provision is inapplicable. *See Waite*, 64 S.W.3d at 222–23. Diana has not otherwise shown that he has a cognizable common law cause of action that is being restricted by statute, or that the restriction is arbitrary or unreasonable when balanced against the purpose of the statute. *In re D.M.*, 191 S.W.3d 381, 391 (Tex. App.—Austin 2006, pet. denied). We overrule Diana's "open courts" challenge in his ninth and final issue.

## V.    CONCLUSION

We affirm the trial court's orders.

CLARISSA SILVA
Justice

Delivered and filed on the
23rd day of June, 2025.

24